CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 04 2019

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TIFFANY BROWN, o/b/o<br>D.B., a minor child,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Civil Action No. 7:18CV00158<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. Glen E. Conrad<br>Senior United States District Judge |

Plaintiff Tiffany Brown filed this action on behalf of her daughter, D.B., challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for child's supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(d). Jurisdiction of this court is established pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

On December 9, 2013, Ms. Brown filed an application for child's supplemental security income benefits on behalf of D.B.[1] In filing the application, plaintiff alleged that she had been disabled since August 1, 2013, due to attention deficit hyperactivity disorder (ADHD), emotional problems, and learning difficulties. (Tr. 183). Plaintiff's claim was denied upon initial

---

[1] For purposes of consistency and clarity, D.B. shall hereinafter be referred to as the plaintiff in this case.

consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 18, 2017, the Law Judge also concluded that plaintiff is not entitled to child's supplemental security income benefits. The Law Judge found that plaintiff suffers from several severe impairments, including ADHD, oppositional defiant disorder, and scoliosis, but that none of the conditions meet or medically equal the severity of a listed impairment. (Tr. 13). The Law Judge also considered each of the six functional domains and concluded that the plaintiff experiences "less than marked" limitations in the first five domains and no limitations in the sixth domain. (Tr. 21–26). Thus, the Law Judge found that the plaintiff does not have an impairment or combination of impairments that functionally equals a listed impairment. (Tr. 14). Accordingly, the Law Judge concluded that plaintiff is not disabled, and that she is not entitled to child's supplemental security income benefits. See generally 20 C.F.R. § 416.924. The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, plaintiff has now appealed to this court.

A child is disabled within the meaning of the Social Security Act if she has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Under the applicable regulations, the determination of whether a child meets this definition is determined via a three-step inquiry. 20 C.F.R. § 416.924. The first determination is whether the child is working and performing substantial gainful activity. Id. § 416.924(b). If the child is not working, it must then be decided whether the child suffers from a severe impairment or combination of impairments. Id. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's

impairment(s) meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. Id. § 416.924(d).

To determine whether an impairment is functionally equivalent to a listed impairment, the Law Judge evaluates its severity in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Id. § 416.926a(b)(1). Functional equivalence exists if the Law Judge finds a "marked" limitation in two areas of functioning or an "extreme" limitation in one area of functioning.[2] Id. § 416.926a(d). In this case, the Law Judge concluded that plaintiff does not experience a "marked" or "extreme" limitation in any functional domain, and therefore does not qualify for supplemental security income benefits.

On appeal to this court, the plaintiff raises several arguments, including that the Law Judge erred in determining that she has less than marked limitations in the areas of attending and completing tasks and interacting and relating with others. After reviewing the record, the court agrees with the plaintiff that the Law Judge's analysis of each of these areas of functioning is incomplete and precludes meaningful review. Accordingly, the court finds "good cause" to remand the case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g).

The regulations applicable to a claim for child's supplemental security income benefits provide that the Social Security Administration will "consider all evidence in [the] case record" in determining a child's functioning, including information from medical sources and nonmedical

---

[2] A "marked" limitation is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation "also means a limitation that is 'more than moderate' but 'less than extreme.'" Id. An "extreme" limitation is one that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3). An "extreme" limitation "also means a limitation that is 'more than marked.'" Id.

3

sources. 20 C.F.R. § 416.924a. Although "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citation and internal quotation marks omitted), he "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding," Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010). The United States Court of Appeals for the Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Id. (citation and internal quotation marks omitted).

The plaintiff first argues that the Law Judge erred in determining that the plaintiff has "less than marked" limitations in the area of attending and completing tasks. In this functional domain, the Law Judge considers how well the claimant is able to focus and maintain her attention, and how well she begins, carries through, and finishes her activities, including the pace at which she performs her activities and the ease with which she changes them. 20 C.F.R. § 416.926a(h). The regulations provide that adolescents should be able to pay attention to increasingly longer presentations and discussions, maintain their concentration while reading textbooks, and independently plan and complete long-range academic projects. Id. § 416.926a(h)(2)(v). They should also be able to maintain their attention on a task for extended periods of time without being unduly distracted or distracting. Id.

In his decision, the Law Judge summarized the rules and regulations applicable to this area of functioning. (Tr. 22). The Law Judge then provided the following explanation for his determination that the plaintiff has "less than marked" limitations in attending and completing tasks:

> Ms. Brown initially reported the claimant could not keep busy on her own or finish what she started, including her homework and chores. While her teacher noted no problems in this area, records show the claimant and her mother endorsed problems with hyperactivity, impulsivity, and organizational skills. As detailed above, the claimant was not initially placed on medication until October 2013. She initially required some medication modifications and providers noted issues with compliance, specifically attending the required appointments to obtain her medications. With compliance, the claimant endorsed improvement in her focus and grades. She did require another medication increase in September 2016 after reporting poor concentration and forgetfulness. However, the most recent records show the claimant continued to take the medication at that dosage. Overall, while the claimant has some issues, especially when off her medications, the record supports only a less than marked limitation.

(Tr. 23) (citations omitted).

Noticeably absent from the Law Judge's assessment of this domain is any discussion of the findings contained in a report from Betty L. Gillespie, Ph.D. Dr. Gillespie, a licensed clinical psychologist, evaluated the plaintiff on June 29, 2014, at the request of the Virginia Department of Rehabilitative Services. (Tr. 297). At the time of the evaluation, the plaintiff had been taking increasing dosages of Vyvanse, an ADHD medication, for over eight months. (Tr. 260, 280, 287, 297). Dr. Gillespie noted that the plaintiff had been given her prescribed medication prior to the psychological evaluation and that the assessment "appear[ed] to provide an accurate representation of [the plaintiff's] current functioning and abilities." (Tr. 298). During the assessment, the plaintiff "evidenced extremely poor ability to complete work carefully" and "engaged in very careless responding." (Tr. 300). Dr. Gillespie observed that the plaintiff's

5

"distractibility ranged from mild to severe depending on the task during the current assessment," and that the plaintiff's carelessness and impulsivity negatively affected scores on diagnostic tests administered during the evaluation. (Tr. 300). Dr. Gillespie's clinical impressions included diagnoses of ADHD, depressive disorder, and oppositional defiant disorder, as well as a provisional diagnosis of disruptive behavior disorder. As relevant here, Dr. Gillespie noted that the plaintiff "demonstrates marked problems with impulsive or careless responding as well as distractibility or difficulty concentrating and attending to auditory stimuli." (Tr. 302) (emphasis added).

In assessing the plaintiff's ability to focus, maintain attention, and complete tasks, the Law Judge did not address the foregoing portions of Dr. Gillespie's report, much less explain why the psychologist's findings were insufficient to establish a marked limitation in the second functional domain. To the extent the Law Judge declined to credit Dr. Gillespie's report, he failed to provide any explanation for doing so. The court concludes that such deficiencies preclude meaningful review of the determination that the plaintiff has less than marked limitations in this area of functioning. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding that remand was necessary because the court was "left to guess about how the ALJ arrived at his conclusions"); see also Jacob G. v. Berryhill, No. 7:18-cv-00015, 2019 U.S. Dist. LEXIS 46092, at *30 (W.D. Va. Feb. 26, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 45552 (W.D. Va. Mar. 20, 2019) (remanding for further proceedings where, among other deficiencies, the Law Judge failed to explain why she did not credit portions of a consultative examiner's assessment indicating that the claimant had issues with attention and hyperactivity).

The plaintiff also argues that the Law Judge erred in determining that the plaintiff has "less than marked" limitations in the area of interacting and relating with others. In this functional

domain, the Law Judge considers how well the claimant is able to initiate and sustain emotional connections with others, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R.§ 416.926a(i). The regulations provide that adolescents should be able to develop friendships with children of a similar age and relate appropriately to children and adults, both individually and in groups. 20 C.F.R. § 416.926a(i)(2)(v). They should also be able to solve conflicts between themselves and peers, family members, or other adults. Id.

In his decision, the Law Judge summarized the rules and regulations applicable to the area of interacting and relating with others. (Tr. 23–24). He then provided the following explanation for his determination that the plaintiff has "less than marked" limitations in this functional domain:

> Ms. Brown endorsed ongoing behavioral problems at home and school, initially stating the claimant did not have and could not make friends, did not get along with her or other adults, including teachers, did not get along with siblings, and did not play team sports. She later reported the claimant had friends, but stated she alienated herself. Records confirm in-school suspensions for defiance, disrespect, and fighting. However, records from providers suggest the claimant did have friends. She reported being close with one of her siblings as well. Notes generally described the claimant as friendly, pleasant, cooperative, and eager to please. These records show the claimant played team sports. Though Ms. Brown reported the claimant would not communicate with her, no issues were seen at her appointments and the claimant was noted as interacting well. These records support a less than marked limitation.

(Tr. 24) (citations omitted).

Upon review of the record, the court agrees with the plaintiff that the Law Judge's explanation fails to paint a complete and fully accurate picture of the plaintiff's ability to interact and relate with others. In particular, the Law Judge's assessment understates the nature and extent of the plaintiff's disciplinary problems and is devoid of any discussion regarding relevant

7

records from Blue Ridge Behavioral Healthcare and Intercept Youth Services. School records indicate that the plaintiff received in-school suspension on nine separate occasions for fighting, disruption, and defiance while she was in middle school. (Tr. 332–34). The plaintiff's high school records depict similar, if not worse, behavior problems. The plaintiff was disciplined for not complying with directives, disrupting class, leaving class without permission, using profanity toward a teacher, and fighting with another student. (Tr. 331–32). Between September 20, 2016 and December 19, 2016, the plaintiff was assigned to in-school suspension for a total of nineteen days. (Tr. 244–46). The plaintiff was also placed on out-of-school suspension in November of 2016, following a confrontation with a security guard. (Tr. 245, 327, 331).

School administrators subsequently referred the plaintiff to Blue Ridge Behavioral Healthcare, where she was evaluated by a mental health counselor. The counselor's report indicates that the plaintiff "was referred by the school due to a recent out of school suspension for arguing with a teacher and a security guard," and that the plaintiff "will scream, yell, and argue with teachers." (Tr. 327). During the evaluation, the plaintiff indicated that "she will stare blankly at teachers or will argue when they ask her to do things, because she doesn't agree with the reasoning behind their requests." (Tr. 327). The plaintiff also reported that she argues with other students. Consistent with the findings and diagnoses of other clinicians, including Dr. Gillespie and Dr. Varsha Desai,[3] the mental health counselor provisionally diagnosed the plaintiff with oppositional defiant disorder and ADHD. (Tr. 328). The counselor referred the plaintiff to Intercept Youth Services for therapeutic day treatment "to help with decreasing negative behaviors and increasing mental health stability." (Tr. 328). Records from Intercept Youth Services

---

[3] *Dr. Desai diagnosed the plaintiff with ADHD and oppositional defiant disorder in June of 2013. With respect to the latter diagnosis, Dr. Desai noted that plaintiff often argues with adults, defies rules, and refuses adult requests, and that she is often angry, resentful, spiteful, and vindictive. (Tr. 253).*

8

indicate that the treatment sessions focused on "anger control issues as evidenced by the client's verbal aggression towards peers [and] school personnel." (Tr. 365).

Although the Law Judge referenced the plaintiff's "in-school suspensions for defiance, disrespect, and fighting," he summarily discounted such evidence based on treatment records suggesting that the plaintiff had friends and was close with one of her siblings. (Tr. 24) (emphasis added). As indicated above, however, the ability to develop relationships with other children is just one component of the relevant analysis. The domain of interacting and relating with others also addresses how well a claimant complies with rules, reacts to criticism, responds to persons in authority, and solves conflicts. In this case, the plaintiff's disciplinary records are replete with instances in which she violated school rules and acted in a defiant, disrespectful manner toward school employees. Indeed, the plaintiff's difficulties with anger and aggression were of such concern that high school administrators placed her on out-of-school suspension and referred her for a mental health evaluation. Nonetheless, the Law Judge did not address the reports from Blue Ridge Behavioral Health Care and Intercept Youth Services, or adequately explain why the behavior problems documented in the plaintiff's school and mental health records do not support more significant limitations in this particular functional domain. In short, the court concludes that the Law Judge failed to build an "accurate and logical bridge" from the evidence to his conclusion that the plaintiff has less than marked limitations in the domain of interacting and relating with others. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted). Accordingly, remand is warranted. Id.

For the reasons set forth above, the court finds "good cause" to remand this case to the Commissioner for further development and consideration.[4] See 42 U.S.C. § 405(g). If the Commissioner is unable to decide this case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send copies of this memorandum opinion to all counsel of record.

DATED: This 4th day of June, 2019.

_____
Senior United States District Judge

---

[4] In light of the court's decision to remand the case to the Commissioner, the court declines to address plaintiff's remaining claims of error.